**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | |
|---|---|
| **BLUELINE RENTAL, LLC; and** )<br>**UNITED RENTALS, INC.** )<br> )<br>      **Plaintiffs,** )<br> )<br>**v.** )<br> )<br>**DANA ROWLAND;** )<br>**ALESHIA MUSGRAVE;** )<br>**JOSEPH KELPE; and** )<br>**SUNBELT RENTALS, INC.,** )<br> )<br>      **Defendants.** ) | **No. 1:18-CV-00195-SNLJ** |

## FIRST AMENDED COMPLAINT

COME NOW Plaintiffs BlueLine Rental, LLC ("BlueLine") and United Rentals, Inc., by and through their attorneys, and for their First Amended Complaint against Defendants Dana Rowland, Aleshia Musgrave, Joseph Kelpe, and Sunbelt Rentals, Inc. (collectively "Defendants"), state:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff BlueLine was a Delaware limited liability company with its principal place of business in The Woodlands, Texas.  BlueLine provided heavy industrial and construction equipment rentals through a network of branches located throughout the United States.

2.      Plaintiff United Rentals is the successor in interest to BlueLine.[1]  United Rentals acquired BlueLine in October 2018.  United Rentals is a Delaware corporation with its headquarter offices located in Stamford, Connecticut.

---

[1] References throughout this Amended Complaint to "BlueLine" should be considered to also include "United Rentals, Inc." as of the effective date of sale of BlueLine to United Rentals, in or about October 2018.

3.      Defendant Dana Rowland is the former Branch Manager at BlueLine's Scott City, Missouri Branch (the "Scott City Branch").  She is a resident of Jackson, Missouri.

4.      Defendant Aleshia Musgrave is a former BlueLine Inside Sales Representative. On information and belief, she is a resident of Missouri.

5.      Defendant Joseph Kelpe is a former Outside Sales Representative.  On information and belief, he is a resident of Missouri.

6.      On information and belief, Defendant Sunbelt Rentals, Inc. ("Sunbelt") is a North Carolina corporation with its principal place of business in South Carolina, and multiple branches in Missouri.

7.      This case arises from Rowland and Kelpe's breaches of contracts and tortious and wrongful conduct committed by Defendants in Missouri within this judicial district.

8.      This Court has jurisdiction over the claims because: (1) there are no matters pending between the parties in any other jurisdiction; (2) BlueLine was a Delaware limited liability company with its principal place of business in Texas; (3) United Rentals is a Delaware corporation with its principal place of business in Connecticut; (4) Rowland, Musgrave, and Kelpe are, on information and belief, residents of Missouri; (4) Defendant Sunbelt is a North Carolina corporation with its principal place of business in South Carolina and therefore the parties are diverse pursuant to 28 U.S.C. § 1332; and (5) the amount in controversy exceeds $75,000.

## <u>GENERAL ALLEGATIONS</u>

### A.      Background on BlueLine

9.      BlueLine provided heavy industrial and construction equipment rentals since 2001.  BlueLine's business model relied on a network of branches located nationwide.

108625854.1

10.     The Scott City Branch is located at 2520 E. Outer Rd., Scott City, Missouri, now operating as United Rentals.

11.     The Scott City Branch provided construction equipment rentals for a number of local and regional businesses.

12.     Each BlueLine Branch was operated by a Branch Manager.  BlueLine's Branch Managers were responsible for directing all operational aspects of the branch, including hiring, training, and development of personnel.  In addition, the Branch Manager was responsible for directing sales activities and meeting sales targets to ensure the Branch is profitable.  The Branch Manager also played a critical role in customer service by developing, strengthening, and maintaining relationships with BlueLine's customers.

**B.     Rowland's Employment with BlueLine**

13.     BlueLine hired Rowland on September 4, 2012, as an Inside Sales Representative at the Scott City Branch f/k/a as the Cape Girardeau Branch.  On or about March 30, 2017, Rowland was promoted to Scott City Branch Manager.  As Branch Manager, Rowland oversaw eight employees, and managed customer accounts and relationships on behalf of the Branch.

14.     On April 8, 2015, Rowland executed an Employee Confidentiality, Nonsolicitation and Noncompetition Agreement (the "Agreement").  *See* Ex. A, Agreement.

15.     Pursuant to Section 524 of the Agreement, Rowland agreed that she would not solicit BlueLine's customers six months after termination of her employment.  The Agreement specifically stated:

> **No Solicitation of Customers.**  While employed by the Company and for six (6) months after termination of that employment for any reason, Employee will not, directly or indirectly, call on, service, solicit, attempt to solicit, or undertake any affirmative efforts, on behalf of or with any entity that is engaged in the business of renting or leasing construction or construction-related equipment, to divert

3

> or take away from the Company any person, firm, corporation, or other entity who is both (i) a current customer of the Company or its affiliates and (ii) to whom Employee, directly or indirectly, provided services, contracted with, or solicited business on behalf of the Company within the twelve (12) months prior to the termination of Employee's employment with the Company. For purposes of this Section 4, prohibited solicitations include, but are not limited to, any act of solicitation with a prohibited contact through any use of social media (such as by posting, updating status, advising of new employment, instant message, etc.).

*Id.* at § 524.

16.     Additionally, Rowland also expressly agreed she would not solicit or recruit BlueLine's employees to work for another entity in the same industry as BlueLine (i.e. renting or leasing construction or construction-related equipment).  The Agreement specifically stated:

> **No Solicitation of Other Employees**. While employed by the Company and for six (6) months after termination of that employment for any reason, Employee will not, directly or indirectly, solicit or recruit, or attempt to solicit or recruit, any employee of the Company for employment by, or to undertake or form any business relationship with, Employee or any entity that is engaged in the business of renting or leasing construction or construction-related equipment. The restriction set forth in this Section 5 shall only apply to the solicitation of individuals employed by the Company at the time of the solicitation and/or recruitment with whom the Employee had contact on behalf of the Company. To indirectly solicit or recruit an employee includes, without limitation, to divulge information about an employee to another person that would assist or help that person to solicit or recruit the employee.

*Id.* at § 525.

17.     Rowland's position as Branch Manager provided her with access to BlueLine's confidential information including pricing policies, sales data, information regarding customers (current and prospective), and other market data.  Among other things, Rowland had access to BlueLine's entire Salesforce and Rentalman databases, which provide customer rates, customer proposals, customer lists and contact information, customer sales trends, and reports of upcoming jobs and projects.  She also had access to payroll information for her entire branch of

4

employees, district financial information, equipment pricing, applicant information, and vendor agreements.

18.     Under Section 522 of the Agreement, Rowland acknowledged and agreed that she was in a position of trust with BlueLine and that BlueLine provided her confidential and trade secret information, which is valuable and unique to BlueLine.  She agreed that she would not under any circumstances "directly or indirectly" use or disclose any confidential information belonging to BlueLine.  She also agreed that she would not use BlueLine's confidential information for her personal benefit.

19.     Under Section 526 of the Agreement, she also agreed, among other obligations, that she would not, while employed with BlueLine and for a period of six months following termination of her employment with BlueLine for any reason, directly or indirectly be "engaged in any business" that rents or leases construction or construction-related equipment within a 50-mile radius of the BlueLine office or facility in which she performed services on behalf of BlueLine.

20.     Rowland further agreed under Section 529 that she was employed "in a position of trust and confidence" with BlueLine.  As such, she agreed that she "owes the Company a duty of loyalty and that the obligations described in this Agreement are in addition to, and not in lieu of, the obligations [Rowland] owes the Company under the common law and applicable statutes."

21.     Pursuant to Section 528 of the Agreement, Rowland agreed that the time periods referenced in her Agreement "shall be tolled and extended for any time during which [Rowland] is in violation of the restrictions.  If the Company initiates legal action to enforce the restrictions and obtains an injunction against [Rowland], then the appropriate restrictive time period(s) will

begin to run on the date the injunction is entered.  [Rowland] agrees that such an extension under the circumstances is necessary and appropriate to provide the Company with the bargained-for protection of its Confidential Information and other legitimate business interests."

22.     Rowland further acknowledged under Section 530(jjj) of the Agreement that "the provisions of this Agreement have been carefully designed to restrict [her] activities to the minimum extent necessary for the protection of the Company's bona fide business interests. [Rowland] has carefully considered these restrictions, and [Rowland] confirms that they will not unduly restrict [Rowland's] ability to obtain a livelihood.  [Rowland] expressly agrees that the covenants . . . are reasonable with respect to their duration, geographical area and scope, as applicable."

23.     Rowland also agreed under Section 527 that, "in light of the importance of the Company's legitimate business interests, any violation or threatened violation of any of the restrictive covenants within this Agreement will result in irreparable harm to the Company, the exact extent of which will be difficult to ascertain, and that the remedies at law for any such violation would not be reasonable or adequate compensation to the Company for such violation. Accordingly, [Rowland] agrees that if . . . she violates these covenants, in addition to any other remedy that may be available to the Company at law or in equity, the Company shall be entitled to specific performance and immediate injunctive relief, including the entry of a temporary restraining order in state or federal court and preliminary and permanent injunctive relief restraining activities that violate this Agreement . . . ."

24.     In addition, Section 542 of the Agreement provides: "In the event of a dispute involving the interpretation or enforcement of this Agreement, a court shall award reasonable attorneys' fees to the prevailing party."

108625854.1

25.     The Agreement further provided in Section 537 that "This Agreement shall inure to the benefit of the Company's successors and assigns."

**C.     Sunbelt Recruited Rowland and Simultaneously Worked with Her to Open A Competing Branch Before Rowland Had Resigned from BlueLine.**

26.     Weeks before Rowland's employment with BlueLine ended, Rowland worked with Sunbelt District Manager, Joseph Alonzo ("Alonzo"), to establish a branch that would directly compete with BlueLine's Scott City Branch, where Rowland remained employed.

27.     Sunbelt was a direct competitor of BlueLine at the time and remains a direct competitor of United Rentals, Inc.

28.     For example, in a text message to Alonzo on February 19, 2018, Rowland stated that she was preparing for her departure and invited Alonzo to view a building she had located to serve as Sunbelt's competing Scott City Branch.  This occurred weeks before Rowland had provided notice to BlueLine of her intent to resign.

29.     On February 27, 2018, Alonzo instructed Rowland to hold off giving notice to BlueLine of her resignation, despite the fact that Rowland was already assisting Sunbelt to compete with BlueLine while still on BlueLine's payroll.

30.     On March 5, 2018, two days before Rowland provided notice of her resignation to BlueLine, and weeks before her employment ended, she wrote in an email to Alonzo that she had been encouraging a customer to do business with Sunbelt instead of BlueLine.  Rowland stated that the customer wanted to "kick[] Sunbelt off the job," but Rowland did "damage control" and convinced him to do business with Sunbelt over BlueLine.  Again, while still employed as BlueLine's Scott City Branch Manager, Rowland also wrote to Alonzo that she had been working with another customer "to get us [Sunbelt] in instead of BlueLine."  This discussion occurred weeks before Rowland's employment with BlueLine even ended.

7

108625854.1

**D.**     **Rowland, with Sunbelt's Encouragement, Misrepresented to BlueLine the Reason for Her Resignation.**

31.     On March 7, 2018, Rowland asked Alonzo whether she should falsely tell BlueLine that she was "going to work for a previous employer."  Alonzo responded, "Yes And see how it goes."

32.     In another text to Alonzo later that day, Rowland wrote that she had been telling BlueLine "I'm going to work for my husband." The statement made by Rowland to BlueLine about working for her husband was false, and Rowland knew it was false at the time she made it.

33.     On March 7, 2018, BlueLine's District Manager, Jerry Montgomery received an email from Rowland tendering her two-week notice from BlueLine.  *See* Ex. B, 3/7/18 Rowland Email.

34.     In the March 7 email, Rowland explained that she was resigning because of an "unexpected opportunity."  *Id.*  She further explained in another email to Montgomery dated March 13, 2018, that she was leaving to help her husband start his new business:   "[A]t this time I need to pursue this with my family and help my husband get his business going."  *See* Ex. C, 3/13/18 Rowland Email.  This statement made by Rowland was false, and Rowland knew it was false at the time she made it.  Additionally, Rowland intentionally did not disclose to BlueLine that she was commencing employment with Sunbelt.

35.     Based on the false representations Rowland made in her March 7 and March 13 emails and to others at BlueLine, which were actively encouraged by Sunbelt, BlueLine believed Rowland was resigning to help her husband with his new business venture.

36.     With the understanding that Rowland was not leaving to work for a competitor, BlueLine wiped clean her company-issued computer and telephone following her departure so that it could be reissued and used by an active BlueLine employee.

37.     Unbeknownst to BlueLine, however, Rowland had in fact resigned to take a job at Sunbelt.

38.     But for Rowland's misrepresentations to BlueLine about the reasons for her resignation, BlueLine would have preserved the information on Rowland's computer and cell phone to determine if she had violated any of her obligations under the Agreement prior to her departure.

39.     BlueLine has since discovered that, on February 23, 2018, Sunbelt sent Rowland a letter extending her an offer of employment as Profit Center Manager Trainee in Fenton, Missouri.  *See* Ex. D, 2/23/18 Sunbelt Offer Letter ("Sunbelt Offer Letter").

40.     On March 1, 2018, Rowland executed the Sunbelt Offer Letter where she represented the following:

> You represent that you are not subject to any agreement prohibiting or restricting you from working in the rental equipment industry or competing with a prior employer.  If this statement is incorrect, you MUST forward to Human Resources a copy of such agreement with your execution below. This offer of employment is contingent upon our review of such agreement.

41.     Pursuant to the Sunbelt Offer Letter, Rowland should have forwarded Sunbelt a copy of the Agreement.  Indeed, Rowland's offer of employment was "contingent" on Sunbelt's review of the Agreement.

42.     As another condition of Rowland's employment with Sunbelt, she was required to execute an Employment Agreement with Sunbelt that contained several restrictive covenant obligations, limiting her ability to compete with Sunbelt or solicit Sunbelt employees and customers for one year following termination of her employment with Sunbelt for any reason.  In other words, while Sunbelt assisted Rowland and others to breach their restrictive covenant agreements with BlueLine, Sunbelt simultaneously required its employees to abide by its own

9

restrictive covenant obligations.

**E.     Rowland and Sunbelt Raided BlueLine's Scott City Branch, in Violation of Rowland's Obligations Under Her Agreement with BlueLine.**

43.     Rowland actively and aggressively solicited BlueLine employees to join Sunbelt, in violation of her obligations to BlueLine under the Agreement.

44.     Rowland's solicitation of other BlueLine employees to terminate their employment relationships with BlueLine began, at the latest, on her last day of employment with BlueLine on March 29, 2018.  That day, Rowland gathered the employees at the Scott City Branch, informed them that she was going to work at Sunbelt, and that she would be working with them "again soon."

45.     Rowland further told the staff at the Scott City Branch that, if anyone at BlueLine asked, she was leaving to work "for the family business" and not at Sunbelt.  Rowland therefore intentionally encouraged others to make material misrepresentations and non-disclosures to BlueLine.

46.     In violation of her obligations under her Agreement with BlueLine, Rowland continued to solicit employees at the Scott City Branch shortly after her departure, encouraging them to join Sunbelt and falsely telling employees that BlueLine intended to close the Scott City Branch.  Sunbelt and Rowland secretly plotted and schemed for months with several BlueLine employees to plan and implement their departure from BlueLine.

47.     Rowland and Sunbelt actively and aggressively recruited Musgrave, in violation of Rowland's Agreement.  In a text to Musgrave on April 10, 2018 for example, Rowland wrote that Sunbelt District Manager "said to tell you hi."  Rowland further wrote: "Lol remind me tomorrow and I'll get his phone number for you.  He asked me if you're coming on board and I told him I was trying to get you."  Musgrave responded, "Aww that's awesome."

10

48.     In another text, Rowland described having BlueLine employees working together at Sunbelt, stating, "I can't wait to have my family back . . . Sunbelt won't know what hit them when we get together."

49.     Sunbelt and Rowland did not stop with their recruitment of Musgrave—the goal was to go after BlueLine's Scott City Branch in order to cripple BlueLine's operations in that area.  For example, Rowland admitted her scheme in a text to Musgrave on April 9, 2018, writing that another BlueLine employee was "finally starting to put two [and two] together that I'm going to try to bring every body except him [to Sunbelt]."

50.     In another text, Musgrave wrote that "we are going to burn it [the BlueLine Scott City Branch] the f*** down . . ."  Rowland responded "you just made me pee a little!  Made my day."

51.     Rowland's text messages with Kelpe also reveal that Rowland was involved in recruiting him to leave BlueLine for Sunbelt.  For example, on April 27, 2018, Rowland coordinated and attended a "meet and greet" between Sunbelt, Musgrave, and Kelpe for the purpose of encouraging Musgrave and Kelpe to join Sunbelt.  Notably, this was more than two months before either Kelpe or Musgrave resigned from BlueLine.

52.     Kelpe and Rowland also discussed encouraging Jamie Proctor (another employee who subsequently left BlueLine for Sunbelt) to leave BlueLine.  Rowland wrote to Kelpe that when several big BlueLine customers "puls out" [sic] and "every other big player cuts out" the BlueLine Branch Manager "will be squirming."

53.     As a direct result of Rowland's efforts, in concert with Sunbelt, **four employees** provided notice of their resignation **within days of each other**: Kelpe (resigned on July 6, 2018), Fred Willferth (resigned on July 6, 2018), James Proctor, Foreman/Shop Forman (resigned on July 9, 2018), and Musgrave (resigned on July 10, 2018).

54.     The departure of four key BlueLine employees at the Scott City Branch within the course of three days has crippled the Scott City Branch and its ability to serve its customers, resulting in substantial losses in sales.

55.     All four employees, Kelpe, Proctor, Wilferth and Musgrave, accepted positions at Sunbelt.  The four employees left BlueLine as a result of Rowland's and Sunbelt's indirect or direct solicitations.

56.     Prior to their departure, several of the former BlueLine employees who left to join Sunbelt intentionally and permanently deleted data from their BlueLine-issued cell phones in an effort to conceal unfair competition by Defendants.

57.     As an example, on Proctor's last day of employment, BlueLine's new Scott City Branch Manager, Mike Berini, asked Proctor to promptly return his BlueLine-issued cellphone. In response, Proctor placed a cellphone on Berini's desk and excused himself to go to the restroom.  Upon returning to Berini's office, Proctor informed Berini that he had inadvertently placed his personal phone on Berini's desk and then handed Berini what he said was his BlueLine-issued phone.  Upon further review of the cell phone, BlueLine discovered that Proctor had "factory reset" his BlueLine issued phone while in the restroom, permanently deleting all data from the phone.

58.     When Wilferth returned his BlueLine-issued cellphone at BlueLine's request, BlueLine discovered the phone had also been "factory reset," resulting in the permanent deletion

of all data on the phone.  When asked about the deletions in his exit interview with BlueLine's

Onboarding and Engagement Specialist, Stephanie LaGarce, Wilferth initially claimed that the

deletion was inadvertent and that he had hit the "wrong darn button."  Upon further questioning,

Wilferth admitted that his conduct was intentional.  When asked whether he was going to work

for Sunbelt, Wilferth also initially claimed that he did not know, but later acknowledged that he

was in fact going to Sunbelt.

59.     A forensic review of Kelpe and Musgrave's BlueLine-issued cell phones revealed

that several messages exchanged in the weeks leading to their departure from BlueLine had been

permanently deleted from the phones.

**F.     Rowland and Others Solicited BlueLine Customers in Concert with Sunbelt and in
         Violation of Their Contractual and Fiduciary Obligations to BlueLine.**

60.     Rowland's solicitation of BlueLine customers aggressively continued after she

joined Sunbelt, and she schemed with and relied on then-current BlueLine employees for

assistance.

61.     Months before Musgrave resigned from BlueLine, Rowland and Musgrave

actively conspired to move BlueLine customers to Sunbelt.  On May 10, 2018, for example,

Musgrave wrote to Rowland: "hey I have about 10 customers want to go to set up an act w

sunbelt for our location do they need to wait till we get there or can they do online [sic]"?

Rowland responded, "Lol that's awesome.  They can online."  Musgrave proceeded to list

roughly a dozen customers she had been encouraging to do business with Sunbelt, to which

Rowland responded: "Oh sweet!" Musgrave further wrote, "And I've opened 6 new [accounts]

last month for here and they all said let them know when they can open [an account] up the[r]e

and they will open on[e] lol. . . I've talk[ed] to some big acts [accounts] too . . .   All the cash

customers too. . . Rowland responded by encouraging Musgrave to "definitely keep doing what you're doing with them."

62.     Not only was Rowland's and Musgrave's conduct in clear violation of their fiduciary duties and Rowland's contractual obligations, they acted with full knowledge that their actions would destroy BlueLine's Scott City Branch; indeed, that appears to have been their purpose.  At one point, Musgrave wrote: "Oh girl I've been so bad . . . They won't have no business left . . ."  (*Id*).  Rowland responded, "Haha we have been together."

63.     In addition to conspiring with Musgrave, Rowland worked in coordination with Kelpe to solicit BlueLine customers on Sunbelt's behalf.

64.     In fact, Kelpe is subject to an Employee Noncompetition, Nonsolicitation, and Nondisclosure Agreement with BlueLine, which was executed on June 12, 2017.  *See* Ex. G.

65.     Under his Agreement with BlueLine, Kelpe was similarly prohibited from soliciting BlueLine employees and customers for a period of twelve months following his departure from BlueLine.

66.     Kelpe was also prohibited under his Agreement with BlueLine from competing with BlueLine within a 50-mile radius of the Scott City Branch for a period of twelve months following his departure from BlueLine.

67.     Kelpe repeatedly violated his Agreement in concert with Rowland and Sunbelt.

68.     In fact, it appears Kelpe shared confidential BlueLine pricing information with Rowland while she was employed with Sunbelt and Kelpe was still employed with BlueLine. Kelpe also helped Rowland recruit BlueLine customers and employees for Sunbelt while he was still employed with BlueLine, all in violation of his Agreement with BlueLine.

69.     When Kelpe joined Sunbelt, he continued to breach his BlueLine Agreement by soliciting BlueLine customers with Rowland's assistance.

70.     BlueLine also learned that a Sunbelt employee called another of BlueLine's customers, Samron Midwest Contracting ("Samron"), and made a sales pitch to get Samron to switch to Sunbelt.  As part of the sales pitch, the Sunbelt employee specifically referred to the fact that Rowland, who had previously been at BlueLine, was now employed at Sunbelt.

71.     BlueLine has also learned that Sunbelt opened a new Branch within a short distance from BlueLine's Scott City Branch and that Rowland is now serving as the Branch Manager for Sunbelt at its new location.  Indeed, Rowland had been working with Sunbelt on preparations for opening the new branch, in violation of her obligations under Section 526 of her Agreement.

72.     Once BlueLine discovered Rowland's misconduct, BlueLine sent Rowland a cease and desist letter demanding that she adhere to the terms of the Agreement and refrain from engaging in any further violating contact.  *See* Ex. E, July 9, 2018 Letter ("July 9 Letter").

73.     BlueLine requested assurances that Rowland would comply with all of her obligations under her Agreement.

74.     A demand letter was also sent to Sunbelt on July 9, 2018 to notify Sunbelt of Rowland's obligations under her Agreement.  *See* Ex. F.  In the demand letter, stated its significant concerns that Rowland had been recruiting several BlueLine employees to join Sunbelt and her solicitation of BlueLine's customers, all in violation of her obligations under the Agreement.  BlueLine also notified Sunbelt that Rowland's conduct was crippling BlueLine's Scott City Branch and was in direct violation of her Agreement.  BlueLine requested that Sunbelt

15

take immediate appropriate steps to ensure Rowland and other former BlueLine employees employed by Sunbelt do not engage in actions that violate BlueLine's rights.

75.     Nonetheless, Rowland continued to solicit significant BlueLine customers long after Sunbelt had notice of both Rowland and Kelpe's contractual obligations.

76.     Defendants' conduct has caused significant financial damage to BlueLine and in particular, to the Scott City Branch.

## COUNT I
## BREACH OF CONTRACT/ INJUNCTIVE RELIEF
### (Against Rowland and Kelpe)

77.     Plaintiffs incorporate each previous allegation as if fully set forth herein.

78.     Rowland and Kelpe entered into valid and enforceable Agreements not to solicit BlueLine's employees and customers after their separation from BlueLine.

79.     Rowland breached the non-solicitation provisions in Sections 524 and 525 of her Agreement by directly or indirectly recruiting or soliciting BlueLine employees and customers.

80.     Kelpe similarly breached the non-solicitation provision in Section 4 of his Agreement by soliciting BlueLine customers.

81.     Kelpe also breached non-disclosure obligations under the Agreement by disclosing confidential BlueLine information to Rowland when she was employed as a competitor.

82.     Kelpe and Rowland also breached non-disclosure obligations under the Agreements by using confidential customer information to solicit BlueLine customers on behalf of Sunbelt.

83.     Rowland and Kelpe also violated the non-compete restrictions of their Agreements by competing with BlueLine within the restricted area of their Agreements.

108625854.1

84.     Rowland's and Kelpe's breaches of their Agreements have caused and are continuing to cause BlueLine irreparable injury for which there is no adequate remedy at law, including lost business relationships with valued customers and employees as well as harm to its goodwill and reputation.

WHEREFORE, Plaintiffs respectfully pray for judgment against Rowland and Kelpe as follows:

A.     That this Court issue an injunction restraining Rowland and Kelpe from:

    a.   Directly or indirectly soliciting, recruiting, or attempting to solicit or recruit, current United Rentals employees for a period of six months from entry of the injunction;

    b.   Directly or indirectly calling on, servicing, soliciting, or attempting to solicit United Rentals customers for a period of six months from entry of the injunction;

    c.   Directly or indirectly engaging in a business that rents or leases construction or construction-related equipment within a 50-mile radius of BlueLine's former Scott City Branch located at 2520 E Outer Rd, Scott City, MO 63780 for a period of six months from entry of the injunction.

    d.   Directly or indirectly using, communicating, disseminating, distributing, or disclosing any confidential or trade secret information belonging to BlueLine, as defined in their Agreements with BlueLine.

B.     Judgment and damages in an amount to be proven at trial against Rowland and Kelpe.

108625854.1

C.     Attorneys' fees pursuant to Section 542 of Rowland's Employee Confidentiality, Nonsolicitation and Noncompetition Agreement and Section 22 of Kelpe's Employee Confidentiality, Nonsolicitation and Noncompetition Agreement.

D.     For such other and further relief as the Court deems proper.

## COUNT II
## DECLARATORY JUDGMENT
### (Against Rowland and Kelpe)

85.     Plaintiffs incorporate each previous allegation as if fully set forth herein.

86.     28 U.S.C. § 2201 provides that "[i]n a case of an actual controversy within its jurisdiction  . . . any Court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

87.     An actual controversy exists between United Rentals as the successor in interest to BlueLine and Rowland and Kelpe regarding United Rentals' entitlement to enforce the restrictive covenants in the Rowland and Kelpe's Agreements with BlueLine.

88.     The restrictive covenants in the Agreements are valid, binding and enforceable against Rowland and Kelpe.

89.     United Rentals as the successor in interest to BlueLine is therefore entitled to a declaratory judgment that the restrictive covenants in the Agreements are valid and enforceable against Rowland and Kelpe.

WHEREFORE, Plaintiffs respectfully pray for judgment against Rowland and Kelpe as follows:

A.     That this Court issue a judgment declaring:

a.   The Agreements are binding and enforceable;

18

    b.  Defendant Rowland has violated the terms and conditions in her Agreement in that she has directly or indirectly solicited, recruited, or attempted to solicit or recruit BlueLine employees;

    c.  Defendant Rowland and Defendant Kelpe have violated the terms and conditions of their Agreements with BlueLine by directly or indirectly calling on, servicing, soliciting, or attempting to solicit BlueLine/United Rentals customers;

    d.  Defendants Rowland and Kelpe have violated the terms and conditions of their Agreements with BlueLine by directly or indirectly engaging in a business that rents or leases construction or construction-related equipment within a 50-mile radius of BlueLine's former Scott City Branch located at 2520 E Outer Rd, Scott City, MO 63780;

    e.  Defendants Rowland and Kelpe have violated the terms and conditions of the Agreements by directly or indirectly using, communicating, disseminating, distributing, or disclosing any confidential or trade secret information belonging to BlueLine, as defined in their Employee Confidentiality, Nonsolicitation and Noncompetition Agreements with BlueLine.

B.  Judgment and damages in an amount to be proven at trial against Rowland and Kelpe.

C.  Attorneys' fees pursuant to Section 542 of Rowland's Agreement and Section 22 of Kelpe's Agreement.

D.  For such other and further relief as the Court deems proper.

108625854.1

## COUNT III
## BREACH OF DUTY OF LOYALTY
## AND USURPATION OF CORPORATE OPPORTUNITIES
### (Against Rowland, Musgrave, and Kelpe)

90.     BlueLine and United Rentals incorporate each previous allegation as if fully set forth herein.

91.     As employees of BlueLine, Rowland, Musgrave, and Kelpe owed duties of loyalty to BlueLine, including to act fairly, honestly and in good faith.

92.     As part of their duty of loyalty, during the course of their employment with BlueLine, Rowland, Musgrave, and Kelpe owed a duty to BlueLine not to solicit BlueLine employees to move to another employer or solicit BlueLine customers on behalf of a competitor.

93.     Rowland, Musgrave and Kelpe breached their duties of loyalty, and/or conspired to breach their duties of loyalty, by, among other things, soliciting BlueLine customers for the benefit of Sunbelt while still employed with BlueLine.

94.     Rowland also breached her duty of loyalty by soliciting BlueLine employees to join Sunbelt while still employed by BlueLine and by planning to compete while employed with BlueLine.

95.     Rowland's, Musgrave's, and Kelpe's behavior was in direct competition with BlueLine and contrary to BlueLine's interests.

96.     Rowland's, Musgrave's, and Kelpe's behavior directly caused, or contributed to cause, damage to BlueLine in an amount to be proven at trial.

97.     Rowland, Musgrave, and Kelpe's actions were  wanton, willful, malicious, oppressive, and performed with conscious disregard and/or reckless indifference to BlueLine's rights.

108625854.1

WHEREFORE, Plaintiffs respectfully pray for judgment against Rowland, Musgrave and Kelpe as follows:

A.      Judgment and damages in an amount to be proven at trial against Rowland, Musgrave, and Kelpe.

B.      Punitive damages for Rowland, Musgrave, and Kelpe's knowing and willful violation of their fiduciary duties.

C.      For such other and further relief as the Court deems proper.

**COUNT IV**
**TORTIOUS INTERFERENCE WITH**
**CONTRACT RELATIONS AND BUSINESS EXPECTANCIES**
**(Against all Defendants)**

98.      Plaintiffs incorporate each previous allegation as if fully set forth herein.

99.      Defendants were aware of the existence of various agreements, business expectancies, and relationships between BlueLine and its employees and customers.

100.      Defendants intentionally, maliciously and improperly interfered, and/or conspired to interfere, with BlueLine's agreements, business expectancies, and relationships with BlueLine's customers and employees.

101.      Defendants lacked justification for their tortious interference with BlueLine's contractual relationships and business expectancies, and such interference was done with improper purposes and means.

102.      Defendants' tortious conduct caused, or contributed to cause, a breach of BlueLine's agreements, business expectancies and relationships with BlueLine's employees and customers.

103.      Defendants' conduct caused, or contributed to cause, damage to BlueLine in an amount to be proven at trial.

21

104.    Defendants' actions were wanton, willful, malicious, oppressive, and performed with conscious disregard and/or reckless indifference to BlueLine's rights.

WHEREFORE, Plaintiffs respectfully pray for judgment against Defendants as follows:

A.    Judgment and damages in an amount to be proven at trial against Defendants.

B.    Punitive damages for Defendants' wanton, willful, and malicious actions.

C.    For such other and further relief as the Court deems proper.

## COUNT V
## AIDING AND ABETTING
### (Against all Defendants)

105.    BlueLine and United Rentals incorporate each previous allegation as if fully set forth herein.

106.    Defendants' tortious conduct caused, or contributed to cause, damage to BlueLine, in an amount to be proven at trial.

107.    Defendants knew that their acts and tortious conduct constituted breaches of duties owed to BlueLine.

108.    Defendants substantially assisted one another, and/or encouraged one another to achieve the breaches of duties owed BlueLine.

109.    Defendants' acts, as described herein, directly caused, or contributed to cause, damage to BlueLine.

110.    Defendants, and each of them, are jointly and severally liable to BlueLine for aiding and abetting one another in their wrongful acts.

111.    Defendants' actions were wanton, willful, malicious, oppressive, and performed with conscious disregard and/or reckless indifference to BlueLine's rights.

WHEREFORE, Plaintiffs respectfully pray for judgment against Defendants as follows:

A.      Judgment and damages in an amount to be proven at trial against Defendants.

B.      Punitive damages for Defendants' wanton, willful, and malicious actions.

C.      For such other and further relief as the Court deems proper.

## COUNT VI
## FRAUD/ FRAUDULENT CONCEALMENT/ NON-DISCLOSURE
### (Against All Defendants)

112.    Plaintiffs incorporate each previous allegation as if fully set forth herein.

113.    Defendants owed a duty to BlueLine not to misrepresent and/or conceal the circumstances of Rowland's, Kelpe's and Musgrave's departure from BlueLine and their recruitment and solicitation of BlueLine customers and employees.

114.    Defendants breached their duties to BlueLine by misrepresenting and concealing facts in numerous ways, including by deleting information from BlueLine devices, failing to disclose and misrepresenting information about plans to leave, and failing to disclose and misrepresenting contacts with BlueLine customers and employees.

115.    Defendants' failure to disclose and/or misrepresentations were done intentionally in an effort to cripple BlueLine's Scott City Branch.

116.    BlueLine relied to its detriment on Rowland's, Kelpe's and Musgrave's material misrepresentations and failure to disclose.

117.    Defendants' fraudulent misrepresentations and/or concealment/non-disclosures caused, or contributed to cause, damage to BlueLine in an amount to be proven at trial.

118.    Defendants' actions were wanton, willful, malicious, oppressive, and performed with conscious disregard and/or reckless indifference to BlueLine's rights.

108625854.1

WHEREFORE, Plaintiffs respectfully pray for judgment against Defendants as follows:

    A.        Judgment and damages in an amount to be proven at trial against Sunbelt.

    B.        Punitive damages for Defendants' wanton, willful, and malicious actions.

    C.        For such other and further relief as the Court deems proper.

DATED this 8th day of July, 2019.

Respectfully submitted,

TUETH KEENEY COOPER
MOHAN & JACKSTADT, P.C.


By: /s/ Ian P. Cooper
    Ian P. Cooper 32133MO
    Mollie G. Mohan 64754MO
    34 N. Meramec Avenue, Suite 600
    St. Louis, Missouri 63105
    (314) 880-3600
    (314) 880-3601 Facsimile
    icooper@tuethkeeney.com
    mmohan@tuethkeeney.com


LEWIS ROCA ROTHGERBER CHRISTIE LLP
    Mary Ellen Simonson
    Laura Pasqualone
    Jennifer Lee-Cota
    201 East Washington Street, Suite 1200
    Phoenix, AZ 85004
    msimonson@lrrc.com
    lpasqualone@lrrc.com
    jleecota@lrrc.com
    (*Pro hac*)

**Attorneys for Plaintiffs**

108625854.1

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was served on all counsel of record through the Court's ECF system on the 8th day of July, 2019.


/s/    Ian P. Cooper
Ian P. Cooper

108625854.1