**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

BLUELINE RENTAL, LLC., and        )
UNITED RENTALS, INC.              )
                                  )
    **Plaintiffs,**             )
                                  )
v.                                )     **Case No. 1:18-cv-00195-SNLJ**
                                  )
DANA ROWLAND, ALESHIA             )
MUSGRAVE, JOSEPH KELPE, and       )
SUNBELT RENTALS, INC.,            )
                                  )
    **Defendants.**             )

<u>**MEMORANDUM AND ORDER**</u>

This case comes before the Court on defendant Sunbelt Rentals, Inc.'s motion to dismiss (#60) and counter-defendants BlueLine Rental, LLC. and United Rentals, Inc.'s motion to dismiss Joseph Kelpe's counterclaim (#62). For the following reasons, Sunbelt's motion is **GRANTED IN PART and DENIED IN PART** and BlueLine's motion is **GRANTED**.

**I. BACKGROUND**

BlueLine and Sunbelt were competitors in the rental business for heavy industrial and construction equipment.[1] BlueLine claims Sunbelt recruited co-defendant Dana Rowland to establish a new branch location that would compete with BlueLine's Scott City, Missouri, branch. Before being hired by Sunbelt, Rowland was a branch manager for BlueLine and had access to confidential and trade secret information including

---

[1] United Rentals is the successor-in-interest to BlueLine, which was acquired by United Rentals after this case was filed.

"pricing policies, sales data, information regarding customers, and other market data."
Rather than hire her immediately, BlueLine alleges Sunbelt "instructed Rowland to hold
off giving notice [] of her resignation" so that she could take steps to sabotage BlueLine's
operations. Rowland executed Sunbelt's letter offering employment on March 1, 2018,
but she did not join Sunbelt until sometime after March 29, 2018—her last day of
employment with BlueLine.

 During that month-long span, and after, Rowland allegedly solicited customers to
switch to Sunbelt and also recruited other BlueLine employees to make the switch as
well. As a result, four BlueLine employees—including defendants Kelpe and
Musgrave—provided notice of their resignation within days of each other, between July 6
and July 10, 2018, which BlueLine says "crippled the Scott City Branch." Rowland was
also receiving confidential pricing information from Kelpe before his resignation, and
Musgrave allegedly agreed with Rowland that they would "burn the BlueLine Scott City
Branch the f*** down."

 The claims against Sunbelt largely circle around its encouragement of Rowland to
breach various terms of her employment agreement with BlueLine. For a period of six
months, Rowland agreed not to solicit customers and not to recruit other employees. The
relevant provisions are set forth below:

> **No Solicitation of Customers**. While employed by the Company and for
> six (6) months after termination of that employment for any reason,
> Employee will not, directly or indirectly, call on, service, solicit, attempt to
> solicit, or undertake any affirmative efforts, on behalf of or with any entity
> that is engaged in the business of renting or leasing construction or
> construction-related equipment, to divert or take away from the Company
> any person, firm, corporation, or other entity who is both (i) a current

customer of the Company or its affiliates and (ii) to whom Employee, directly or indirectly, provided services, contracted with, or solicited business on behalf of the Company within the twelve (12) months prior to the termination of Employee's employment with the Company. For purposes of this Section 4, prohibited solicitations include, but are not limited to, any act of solicitation with a prohibited contact through any use of social media (such as by posting, updating status, advising of new employment, instant message, etc.).

**No Solicitation of Other Employees**. While employed by the Company and for six (6) months after termination of that employment for any reason, Employee will not, directly or indirectly, solicit or recruit, or attempt to solicit or recruit, any employee of the Company for employment by, or to undertake or form any business relationship with, Employee or any entity that is engaged in the business of renting or leasing construction or construction-related equipment. The restriction set forth in this Section 5 shall only apply to the solicitation of individuals employed by the Company at the time of the solicitation and/or recruitment with whom the Employee had contact on behalf of the Company. To indirectly solicit or recruit an employee includes, without limitation, to divulge information about an employee to another person that would assist or help that person to solicit or recruit the employee.

ECF #34-1, p.4, §§ 524, 525. The complaint alleges Sunbelt was made aware of Rowland's obligations under her employment agreement no later than July 9, 2018, when BlueLine sent a demand letter to Sunbelt raising concerns about Rowland's conduct. In this letter, BlueLine insisted that Sunbelt take immediate steps to ensure Rowland (and others) were not engaging in actions that violated the employment agreement. Nonetheless, Rowland continued to "solicit significant BlueLine customers long after Sunbelt had notice." But even before the July 9 date, BlueLine says Sunbelt was aware of Rowland's contractual obligations and disregarded them. BlueLine points out that Sunbelt's offer letter—dated February 23, 2018—required Rowland to either "represent that [she] was not subject to any agreement prohibiting or restricting [her] from working

in the rental equipment industry or competing with a prior employer" or else forward a copy of such to Sunbelt's human resources department. The inference, of course, is that Rowland gave Sunbelt a copy of her employment agreement well before the demand letter was sent.

Three counts are asserted against Sunbelt: (1) Count IV—tortious interference with contractual relations and business expectancies; (2) Count V—aiding and abetting; and (3) Count VI—fraudulent concealment. BlueLine concedes the fraud count should not have been made against Sunbelt at this time, therefore Count VI is dismissed without prejudice. Sunbelt says the remaining counts should be dismissed under Rule 12(b)(6) because they fail to "allege a facially plausible claim."

## II. STANDARD OF REVIEW

The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989)). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Jones v. Douglas County Sheriff's Dept.*, 915 F.3d 498, 499 (8th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Courts "do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 547 (2007). A complaint must set forth factual allegations which are enough to "raise a right to relief above the speculative level." *Id*. at 555.

In addressing a motion to dismiss, a court must view the allegations of the complaint in the light most favorable to the plaintiff. *United States ex rel. Ambrosecchia v. Paddock Laboratories, LLC*., 855 F.3d 949, 954 (8th Cir. 2017). While a complaint challenged by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff must still provide the grounds for relief, and neither "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" will suffice. *Bell Atlantic Corp*., 550 U.S. at 545 (internal citations omitted). That is to say, neither "legal conclusions" nor "conclusory statements" will "save [a] complaint" from dismissal pursuant to Rule 12(b)(6). *Whitney v. City of St. Louis, Mo*., 887 F.3d 857, 860 (8th Cir. 2018).

## III.  ANALYSIS

### A.  Sunbelt's Motion to Dismiss

#### i.  Viability of Plaintiffs' Tortious Interference Claim

To begin, plaintiffs' tortious interference claim is inappropriately compound and complicates this Court's analysis. Tortious interference comes in "two forms … as distinct and separate torts." *See Rail Switching Servs, Inc., v. Marquis-Missouri Terminal, LLC*., 433 S.W.3d 245, 258 (Mo. App. E.D. 2017). Generally, "allegations of tortious interference with a contract refers to the defendant's intrusion on an existing contract." *Id*. at 258-259. Whereas, "allegations of tortious interference with a business expectancy

5

generally pertains to the defendant's interference with a reasonable expectancy of future financial benefit." *Id*.

On the latter claim, no business expectancy has been detailed in the complaint beyond the conclusory allegation that Sunbelt was aware of and otherwise harmed BlueLine's "business expectancies"—apparently an indirect reference to BlueLine's customer base, or else its employees. One reason this expectancy must be properly pled with factual detail is to evaluate its objective reasonableness. Indeed, "mere hope is not enough," rather the "expectancy must be reasonable and valid under the circumstances presented." *Vilcek v. Uber USA, LLC*., 902 F.3d 815, 818 (8th Cir. 2018) (quoting *Stehno v. Sprint Spectrum, LP*., 186 S.W.3d 247, 250 (Mo. banc. 2006)). Prior dealings with customers may suggest a valid business expectancy, but even then the complaint must give some definition to the anticipated business that is likely to follow. *See Western Blue Print Co., LLC. v. Roberts*, 367 S.W.3d 7, 19 (Mo. banc. 2012) (plaintiff presented sufficient evidence of future business expectancy in university contract bid where record reflected success on two prior bids). Simply put, if BlueLine had an objective expectation in *particular customers* or *particular employees*, it must give factual meaning and support to those expectations. Here, it failed to do so. Accordingly, this separate claim of tortious interference will be dismissed.

On the separate claim for tortious interference with a contract, five elements must be met: "(1) a contract; (2) defendant's knowledge of the contract; (3) intentional interference by the defendant inducing or causing a breach of the contract; (4) absence of justification; and (5) damages resulting from defendant's conduct." *Rail Switching Servs.,*

*Inc.*, 533 S.W.3d at 259. Sunbelt argues BlueLine has failed to properly support two of these five elements. First, BlueLine has not pled any facts to support a finding that Sunbelt had knowledge of the contract at issue—here, Rowland's employment agreement and its non-compete provisions. Second, Sunbelt says BlueLine has not pled any facts showing it employed improper means in inducing Rowland's breach. In essence, this challenges the fourth element—absence of justification—in recognition that "[a] defendant cannot be held liable for interfering with a business relationship if he or she has an unqualified right to perform the act." *Western Blue Print Co.*, 367 S.W.3d at 20.

The first argument is easily set aside. The parties do not dispute that Sunbelt was aware of Rowland's employment agreement no later than July 9, 2018, when Sunbelt was asked to stop Rowland from further interfering with BlueLine's business. The complaint specifically embraces that misconduct continued to occur thereafter (within the six-month non-compete period provided for in the agreement). But, even before that time, the complaint also indicates Sunbelt's offer letter, coming as early as February 23, 2018, required Rowland to either certify that she was not bound by a non-compete agreement or else forward a copy of such to Sunbelt. Therefore, the pleadings support an inference that Sunbelt was aware of the various non-compete provisions in Rowland's employment agreement.

The second argument, absence of justification, is based on the general rule that "employees whose contracts are terminable at will have the right to terminate their employment for the purposes of competing with their employer." *Salomon v. Crown Life Ins. Co.*, 536 F.2d 1233, 1239 (8th Cir. 1976). In fact, "they are allowed to plan and

7

prepare for this competitive enterprise prior to their termination without revealing their plans to the employer." *Id*. In *Salomon*, the Eighth Circuit rejected a tortious inference claim asserting that a defendant insurance company conspired to see that three employees of plaintiff, an insurance broker, would leave and start up a competing insurance agency acting as general agents for defendant. *Id*. The Eighth Circuit found that defendant was "motivated by a desire to protect its valid economic interests in the St. Louis market" and did not engage in "malice" while doing so. *Id*. at 1240, 1243. But, *Salomon* is only conceptually similar to the issues faced here—the facts are different. Notably, the Eighth Circuit was careful to emphasize that the three employees defendant was recruiting were "not committed to [plaintiff] in any contractual or fiduciary sense." *Id*. at 1243. And plaintiff had failed to "prove that [defendant] maliciously or without justifiable cause induced the breach of the relationship between [plaintiff] and his three [employees]." *Id*. at 1240.

The allegations here—taken as true—are different. BlueLine alleges that Sunbelt knew of Rowland's (and the other employees') obligations and nonetheless encouraged and worked with her to breach them so as to gain a competitive advantage. Though it is not wrongful to simply encourage an employee to join a competitor, or to encourage customers to try a competitor's business, it would be wrongful to do so in violation of their restrictive covenants. That is undoubtedly an effort to interfere with a third-party contract. *See Property Tax Representatives, Inc. v. Chatam*, 891 S.W.2d 153, 160 (Mo. App. W.D. 1995) (finding it to be an "unlawful act" in conspiracy to encourage and aid employee to breach employee's non-solicitation agreement with former employer);

8

*Schott v. Beussink*, 950 S.W.2d 621, 628 (Mo. App. E.D. 1997) (employer alleging employees conspired to form partnership by unlawfully terminating their employment contracts and soliciting employer's clients in violation of restrictive covenants stated a claim for civil conspiracy; though forming a partnership was not wrongful, the means to accomplish his goal was); *see also* RESTATEMENT (SECOND) OF TORTS § 766 (1979) ("inducing or otherwise causing" person to "not perform [their] contract" subjects defendant to liability for intentional interference with contract). This Court holds, therefore, that BlueLine has stated a claim for tortious interference with a contract.

### ii.  Viability of Plaintiffs' Aiding and Abetting Claim

Sunbelt also takes issue with BlueLine's aiding and abetting claim arguing that the complaint fails to "contain any factual allegations that demonstrate 'substantial assistance' or 'encouragement' by Sunbelt." Despite Sunbelt's suggestions to the contrary, the standard for aiding and abetting is not an onerous one. It is true that two defendants must be in more than mere agreement, they must instead give "substantial assistance or encouragement." *Bradley v. Ray*, 904 S.W.2d 302, 315 (Mo. App. W.D. 1995). But, encouragement is as simple as urging an intoxicated man to drive fast and disobey traffic signs, *see Shelter Mut. Ins. Co. v. White*, 930 S.W.2d 1, 5 (Mo. App. W.D. 1996), or else engaging in an "element [of] cooperation" to further a "common plan []" designed to commit a tortious act." *Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241, 245 (Mo. banc. 1984). The complaint expressly states that Rowland and Sunbelt cooperated to "actively and aggressively recruit Musgrave in violation of Rowland's Agreement." It goes on to say that Sunbelt "actively encouraged" Rowland to make false representations

to BlueLine, or else hide information, apparently in effort to ensure Rowland could continue to work from within BlueLine before her eventual resignation. These are certainly enough facts, when taken as true, to support a finding that Sunbelt engaged in an "element of cooperation" with Rowland to violate the restrictive covenants of her employment agreement.

### B. BlueLine's Motion to Dismiss Kelpe's Counterclaim

In the second motion at issue, BlueLine moves to dismiss Kelpe's counterclaim for tortious interference with a contract or business expectancy. That counterclaim asserts BlueLine's July 2018 demand letter to Sunbelt—demanding Sunbelt to "take appropriate steps to ensure [Rowland and Kelpe] do not engage in further violations of their [employment] agreements"—and the instant action constitute tortious interference with Kelpe's employment. He was terminated by Sunbelt at some point after the demand letter was sent and alleges this was the "direct and proximate result of BlueLine's [] legally unjustified interrereferences." BlueLine alleges the statements made, both in the demand letter and the pleadings, are privileged and cannot act as a basis for Kelpe's claim.

On the issue of privilege, this Court could not locate any Missouri Supreme Court case directly on point. But, the Western District of Missouri has anticipated that pre-suit statements by plaintiff's attorney forwarded to a defendant are privileged and cannot be made the basis of a defamation suit. *See Trachsel v. Two Rivers Psychiatric Hosp*., 883 F.Supp. 442, 443 (W.D. Mo. 1995). And that understanding has been extended to tortious interference claims couched in defamation-type language that, if allowed, would merely "defeat an established privilege by artful pleading." *Heart of Am. Grain Inspection Serv.,*

10

*Inc. v. Mo. Dept. of Agric.*, 1996 WL 377068 at *4 (W.D. Mo. Jul. 3, 1996), *aff'd* 123

F.3d 1098 (8th Cir. 1997); *see also Alternate Fuels, Inc. v. Cabanas*, 435 F.3d 855, 859

(8th Cir. 2006) (recognizing precedent "applying the absolute privilege defense to a claim

of tortious interference with contract under Missouri law"); *Remington v. Wal-Mart*

*Stores, Inc.*, 817 S.W.2d 571, 575 (Mo. App. S.D. 1991) (extending absolute privilege to

tortious interference claim where it was essentially couched in defamation-type injuries).

*Trachsel* relied on *Laun v. Union Elec. Co. of Mo.*, a rather dated Missouri Supreme

Court decision, which explained "defamatory matter *contained in pleadings* filed

according to law in a court having jurisdiction, *if relevant and pertinent to the case*, is

absolutely privileged, and it is immaterial that the allegations are false and maliciously

made." 166 S.W.2d 1065, 1069 (Mo. 1942) (emphasis added). The reason for this

privilege was to provide "[p]erfect freedom to say in their pleadings whatever the parties

choose to bring to the consideration of the court or jury [so as] to promote the intelligent

administration of justice," the "attainment of this result" being of "much greater

importance than the prevention of evils arising" from otherwise false or malicious

misconduct. *Id.* at 1069-1070.

Here, the Court finds the matters stated both in the demand letter and this lawsuit

are consistent with and relevant to the ultimate claims being made by BlueLine—

breaches of certain restrictive covenants contained in the individual defendants'

employment agreements with BlueLine. Whether BlueLine's allegations turn out to be

false or not, an absolute privilege attaches to that matter which is contained both in the

pleadings and in pre-suit correspondence seeking to address concerns made the basis of

the lawsuit for which those pleadings derive. *See Trachsel*, 883 F.Supp. at 443 (defamatory statements send to co-defendant that "were preliminary to a contemplated judicial proceeding and related to that proceeding [] were absolutely privileged"); *Laun*, 166 S.W.2d at 1071 ("parties to judicial proceedings are absolutely privileged to publish false and defamatory matter of another during the course of and as part of a judicial proceeding in which he participates"); *see also* RESTATEMENT (SECOND) OF TORTS § 587, Cmt. E (1977) (extending judicial privilege to preliminary communications that have "some relation to a proceeding that is contemplated in good faith and under serious consideration"). To hold otherwise would chill the exercise of BlueLine's rights to protect its legal interests in its restrictive covenants. Therefore, because BlueLine's statements to Sunbelt were absolutely privileged, Kelpe's counterclaim will be dismissed.

## IV. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that defendant Sunbelt Rentals, Inc.'s motion to dismiss (#60) is **GRANTED IN PART and DENIED IN PART.** To the extent Count IV makes a separate claim for tortious interference with a business expectancy, that claim is **DISMISSED without prejudice.** Further**,** Count VI for fraud is hereby **DISMISSED without prejudice**. In all other respects, Sunbelt's motion is **DENIED**.

**IT IS FURTHER ORDERED** that counter-defendants BlueLine Rental, LLC. and United Rentals, Inc.'s motion to dismiss Joseph Kelpe's counterclaim (#62) is **GRANTED**. Kelpe's sole counterclaim for tortious interference with contract or business expectancy is **DISMISSED with prejudice**.

12

So ordered this 20th day of April 2020.

STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE